We have multiple cases before the court this morning, five cases total. One has been submitted and four will be argued today. But before we get to that business, we have some other important business, and I understand that Judge Clevenger, you have a few motions that you would like to make. Thank you, Madam presiding judge. I have two motions to make that concern adding members to the bar of this court. First, I will move the admission of Matthew A. Lembo, who is a member of the bar and good standing in the highest court of the state of New Jersey. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. I have a second motion, in which I move the admission, you have to remain standing. I move the admission of Kai Z, who is a member of the bar and is good standing in the highest court of the state of California. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. I can make those two averments about satisfaction of qualifications on a personal basis. Each of these gentlemen has served over the last year as my law clerk. It's an honor to have had them serve me and serve the court. I hope that if the motion is granted, we'll see both of you back here in front of the court many times in the future. Should we consider the motion? Yes, and I support the motion. Okay. It was a close call, but the motion is granted. Welcome to the bar. Thank you. Please raise your right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Welcome to the bar of the United States Court of Appeals. Thank you, Mr. Attorney. You're welcome. You're welcome. Thank you.  It is an appeal from the Court of Appeals for Veterans' Claims. Mr. Carpenter, I understand that you want five minutes for rebuttal? Yes, ma'am. Okay. You may begin. May it please the Court, Kenneth Carpenter appearing on behalf of Mike Dollison. The issue in this case is whether or not the Veterans Court erred as a matter of law by failing to require that the Board of Veterans' Appeals apply the rule of law created in Cohen v. Brown. Mr. Carpenter, before we get to the merits of your appeal, I'm not sure that you have standing to be here. The government, in its brief, raised the question of whether or not your client has suffered any prejudice by getting an MDD diagnosis instead of PTSD. And as I understood your reply to that President's argument, you said, well, you didn't think so. I didn't see any articulated response in your reply brief to the challenge to whether or not your client has suffered any prejudice. So can you tell us what injury, in fact, what does your client stand to gain by having a diagnosis of PTSD instead of MDD? It has to do with the evaluation of his disability. The disability for a psychiatric disability is rated under a general rating criteria by the VA, and it goes based upon the severity of the symptoms. The symptoms of major depressive disorder are much more narrow than the symptoms of post-traumatic stress disorder. But what do you get? What does your client win if the label of PTSD is put on the diagnosis instead of MDD? He potentially gets a higher rating than the rating that was assigned for the scheduler rating for the degree of disability for his psychiatric disability. What is his current rating? On remand, the rating assigned to the major depressive disorder was 50%. There are two available ratings left under the rating schedule of 50%, excuse me, 70%. That's MDD, that's outside the record, right? That's outside the record, that's right. So on a remand, he got a 50% MDD? Yes. And you're saying you think there's a possibility he can get a higher than 50% PTSD? A 70% or a 100% rating, that's correct. Simply because there is a wider spectrum of symptoms in the diagnostic and statistical manual for the condition of post-traumatic stress disorder than the more narrow diagnostic label that was given by the VA examiner of major depressive disorder. Is that a spectrum of symptoms to establish the fact or to establish the degree? To establish the degree, not the fact. And that's why the presumption of meeting the criteria under DSM is so important in this case because that presumption is afforded by a rule of law created by the Veterans Court. If that rule of law were to be applied, then Mr. Dollison would have received the presumption and the burden would have shifted to the government to rebut that presumption. And merely having a diagnosis, or excuse me, an examination that says that he does not meet the criteria does not rebut the presumption per se. Why wasn't the presumption rebutted in this case by the examination that says he didn't meet the standards? Because that is not sufficient evidence to rebut the presumption. The presumption carries with it a requirement that there be more evidence to overcome the presumption. Where do you get that out of Cohen? Out of Cohen, not, but out of the standard for a presumption. A presumption gives the benefit to the party to which it is being afforded, and then the other side, in this case the VA, would have to come forward with evidence that would overcome that presumption. There are different kinds of presumptions. A state evidentiary presumption, yes, there is a presumption that assumes there must be additional weight that is proffered by the party who wants to overcome the presumption. But we refer to presumptions all the time when all we're saying is that in the absence of any evidence to the contrary, we'll assume. But if there's evidence to the contrary, then the obligation is to weigh the evidence. And it's not necessarily something that has to be super evidence. And that's consistent with Cohen, right, that says it has to be presumed unless evidence shows to the contrary. To the contrary. And the fact is that that was not what was done by the board. What the board simply said was that there was no evidence that PTSD met the criteria. And there was evidence. Is that the issue you raised on appeal? Your issue on appeal is whether the Court of Veterans Appeals erred by not applying Cohen. That was the issue that you raised on appeal. That's correct, Your Honor. Well, didn't they address Cohen in detail in their opinion and explain why it is that it wouldn't apply and then say even if it did apply, we would think that it was outweighed? But that, Your Honor, was the obligation of the board to do under the presumption. The board had an obligation to make that analysis. That was not the grounds on which the board made its decision. The board, in this case, made a finding. Well, then your appeal should have been on the basis of error by the board, not error by the CAVC. I'm sorry, Your Honor? Then your appeal should have been based on error by the BVA, not the CAVC. You chose the wrong target for your error argument. But it was the Veterans Court that said that it was not persuaded by Mr. Dollison's argument that the decision in Cohen required a reversal of the board's decision. This was the argument that was presented by Mr. Dollison to the Veterans Court, that it was error for the board to have not afforded Mr. Dollison the benefit of that presumption. Mr. Garber, the Cohen presumption was created, as I understand it, to bridge the gap between two regulations that existed at the time that the Cohen opinion was written. That's correct. And those regulations don't exist anymore. No. And the need for the Cohen presumption doesn't seem to me to exist in a case such as this, where all the diagnoses are happening well after the amendments of the regulation. Well, I respectfully disagree, Your Honor, because the post-traumatic stress disorder regulation at 3.304F is the only regulation that requires specifically that the diagnosis of post-traumatic stress disorder meet the diagnostic criteria. There is no comparable regulation that says that, for instance, major depressive disorder must meet the criteria of DSM. There is a specific regulation that talks in terms of... You're asking for a PTSD diagnosis. And as I understand the regulations now, it's very clear. It says if you do this, you've got to follow the diagnostic test. That's correct. And the Cohen presumption... And if you follow the diagnostic test here, your client loses. Respectfully, I disagree, Your Honor, because you follow the diagnosis made by the treating mental health professionals, and the diagnosis was repeatedly and consistently post-traumatic stress disorder. In fact, no treating physician ever diagnosed... And the findings were that those diagnoses weren't following the protocol. But under the presumption in Cohen, the DA... What I'm saying is I don't understand why we don't write an opinion saying that Cohen presumption no longer has any vitality. It served its purpose while the regulations were in conflict and needed to be harmonized. The regulations are no longer in conflict. They don't need to be harmonized, so why do we continue to have a vestigial organ attached to PTSD analysis? And that certainly is within your purview, Your Honor. Why wouldn't that be the right thing to do? Because that is not appropriate. And this case is the perfect example of why it's not appropriate in the context of veterans' cases. In veterans' cases, the VA is supposed to be acting in a way that advocates for the veteran. This is supposed to be a non-adversarial system in which we do not compete between VA examiners... That's your best argument for why we would keep the Cohen presumption alive under the new regulations? Yes, because the... Because it would be unfavorable to veterans to take it, in your case, to take it away? Yes. Let's assume we keep the Cohen presumption. What's your response to the alternative argument that the Veterans Court analyzed and said, even if the presumption applies, we believe it's overcome here? Because that is a Chenery violation if you follow that logic, because that was not the basis upon which the board made its decision. The board did not consider or apply the presumption. Now the Veterans Court, on appeal, is considering and applying the presumption and saying, as we consider and apply it, that we find that the presumption was overcome. But wait a minute. Now the issue you've raised on appeal, specifically, is whether the Veterans Court erred as a matter of law by failing to apply the rule of law created in Cohen. I just read directly from your brief, and now you're saying that's a Chenery violation, had they actually applied it. When they had to apply it in the sense that the board was required to apply it. The allegation, the averment of error made by Mr. Dollison to the Veterans Court was, is that the board erred by failing to afford him the benefit of the presumption under Cohen. When it went to the Veterans Court, the Veterans Court said that they could apply it in the first instance. And I'm saying that in order to apply the presumption. I understand what you're saying. It's just inconsistent with what you raised on appeal in your blue brief as being issued before this court. I don't understand the consistency. That's what I'm asking you about. I understand the issue you're raising here. I'm sorry, I was trying to respond to Judge O'Malley's question in the context in which it was presented. My question to you is, how is what you're saying now consistent with your statement of the issue on appeal in your blue brief? That the Court of Appeals for Veterans Claims made a decision that said that the court was not persuaded that the appellant's reliance upon Cohen in arguing for reversal of the board's decision persuaded the court. Therefore, the court looked at the Cohen presumption. And I believe they misapplied the Cohen presumption when they did that. Because the Cohen presumption requires an analysis of... I understand your argument. Your complaint with the BVA opinion was that it simply didn't mention Cohen. Correct, Your Honor. It mentioned all the evidence. Yes. Right? Yes. And so what the CAVC is saying, and coming back to the presiding judge's question to you, the CAVC is saying, well, even if there is a Cohen presumption, there's no harm here because the evidence shows that it was effectively rebutted. And then the CAVC simply parrots all the evidence that was trotted out by the BVA. Right? Correct. And so I don't think you can fairly say that the CAVC was deciding the case on a different ground than the BVA did. Just because the BVA didn't put the word Cohen in the mix. As I understand the board's obligation under 7104A, the board is obligated to apply all potentially applicable provisions of law. The Cohen presumption was a potentially applicable provision. The board did not apply it. The failure to apply it violates the board's mandate under 7104A. For the court to then make the decision based upon the averment of error made by Mr. Dollison decides it then upon a ground  Okay. Thank you, Your Honor. We'll give you two minutes for rebuttal. Counsel, can you start with your harmless error argument? What's your response to Mr. Carpenter's view that this wouldn't be harmless because he could potentially get a higher rating for PCSD? Yes, Your Honor. We respectfully disagree with that view. My understanding of the way that disability ratings work, and in this case in particular, is that VA looks at the collection of symptoms in terms of their impact on occupational and employability issues and then assigns a rating based on those symptoms. Our understanding is that Mr. Dollison's rating, based on the totality of his symptoms, which have already been rated at 50%, would not change whether that 50% was rated as an MDD diagnosis or a PTSD diagnosis. In fact... Is there a wider spectrum that Mr. Carpenter avers in terms of the analysis? A wider spectrum of symptoms under PTSD? Do you know the answer to this question? You're with the Justice Department, right? I don't know the answer to that question, Your Honor. Have you consulted with the VA on this issue? I have. And my understanding is the way the rating system works is that the symptoms that are present are rated so that the constellation of symptoms that Mr. Dollison is suffering has been rated at 50%. There are no other symptoms... Well, they didn't consider the other symptoms. They were only looking at those symptoms that would support a major depressive disorder diagnosis. And so we can't possibly know whether or not there was some other symptom that they didn't really even consider that they might have factored in. That's not my understanding, Your Honor. This isn't in the record, so I'm cautious about this. But the rating actually says this collection of symptoms diagnosed as MDD claimed a PTSD 50% rating. The VA is looking at all the symptoms that have been discussed in Mr. Dollison's medical history. There aren't... Everything that has been documented that is a symptom that he's experiencing is taken into account in the rating. And I should add, just for the record, that Mr. Dollison, although his psychological condition has been rated at 50%, he is currently on what's called a total disability for individual unemployability. So his rating is actually... He's getting 100% at this time because he's been rated based on not just his psychological symptoms... Well, does that affect the standing issue? I mean, if he's 100% rated under TDIU now, what could he possibly gain by getting a PTSD diagnosis? I don't know, Your Honor, and that's... Anything? I'm sorry? Is there anything he could concrete that Mr. Dollison, that he could gain? No, Your Honor, but in the interest of being transparent with the court, I'm not clear, just because it goes beyond my expertise and in my consultations with VA, whether there's ever, you know, in a speculative way, a possibility that that TDIU of 100% could change in 5, 10, or 20 years. But the symptoms... What is not going to change are the symptoms of Mr. Dollison's psychological illness diagnosed as MDD and claimed as PTSD that VA has identified and has rated as 50% disabling, regardless of whether... How do we... There's an Article III requirement. There needs to be a direct and concrete injury. And you're telling us that there's not one, and Mr. Cartman is telling us there is one. Are we supposed to write an opinion that says we don't know whether we have jurisdiction or not, but it's okay to proceed? Well, Your Honor, I think the appropriate way... The appropriate way? The appropriate way to deal with that issue is... We've noted this as a prejudice issue, but there's a more straightforward jurisdictional issue that would logically precede an issue of prejudice, and that's the fact that... Our jurisprudence in this court treats this as an Article III standing issue. Treats it as a jurisdictional issue. Your Honor, we did not conceive this as a jurisdictional issue. We conceived this as a matter of... If there's a violation... You think that there is Article III standing in this case? It's not an issue we've contested, so I think, in effect... We're raising it. That's our obligation as a court to make certain we have jurisdiction. The court handed down a decision on the 3rd of August in a case called JTEC Corporation v. GK Automotive. It was an appeal coming out of the Patent Office, and it made very clear that there's an Article III standing, constitutional standing requirement in this court. There has to be injury in fact. The injury has to be concrete and particularized. So... I understand the point Your Honor is making. I would say that we could not see how Mr. Dollison, based on our understanding of how the VA rating system works, where he's been rated for this psychological illness, that rating, 50% disabled, is not going to change whether it has been diagnosed as MDD or PTSD. We can't see... But you argued it as a harmless error analysis, but you didn't really give us exact citations to all of the criteria that they employ, and even now you're not quite able to tell us that you're sure he wouldn't get any benefit from this. Well, I'm sorry, Your Honor. The answer to that is we cannot see how he could get any benefit for it. When I said I wasn't sure, I was mentioning the TDIU issue. I wanted to make it clear for the record that he's not getting 50%, but 100% now. I am not sure, ultimately, whether there's some reason that that could change, but we are sure, or at least we don't see any way, that his 50% rating, based on his current psychological symptoms, would change based on whether it's diagnosed as MDD or PTSD. The question is whether or not if he got a PTSD diagnosis, would his rating be 50% or greater? Yes, it would be, because it's the same symptoms. The VA has not looked at only the symptoms that might be considered MDD symptoms. VA, in giving Mr. Dollison a 50% rating, has looked at all of his symptoms collectively and rated them 50%. For him to have a different rating, he would have to have a change in his symptoms, not a change in his diagnosis. Your earlier answer sounded a little bit less sure on that point to me. I think, just to make sure I understand, what you're saying now is that the symptoms that are considered for the rating for PTSD are not different from the symptoms that are considered for the rating for major MDD. Is that correct? I want to be precise about this, because obviously we want to be transparent with the court. I think VA comes at that question from a different direction, which is to say that VA looks at the symptoms that are apparent and rates those symptoms. Under the DSM, the symptoms could be different, but you're saying that he, as a person, only manifests so many symptoms. That's right. Those symptoms have been determined to be 50% disabling. They decided that the symptoms put him in the major depressive disorder bucket rather than in the PTSD bucket. Well, that's what the examination that is in the record at pages 45 to 56 made a determination. VA's rating, which is not part of the record but I have read, says for his psychological illness, 50% diagnosed as MDD claimed as PTSD. So VA is looking at the totality of his symptoms as they are present today and saying, this has been put in the MDD bucket, he claims it as a PTSD bucket, but in either case it's 50% disabling and we're giving him every bit of that 50%. So assume that we find either that there is standing or that standing is a waivable argument and you've waived it by not raising it here and we get to the merits of the legal argument. I'm confused by your other jurisdictional argument because clearly this is a legal issue. He said there is a Cohen presumption that was supposed to apply both at the board and at the Veterans Court and it wasn't applied. How is that not a legal issue within the purview of our jurisdiction? It's not a legal issue because at base this claim is not about Cohen. The Veterans Court effectively applied Cohen and said even if it applies, this is a matter of factual weighing, which is a factual determination. But isn't the weighing supposed to be done by the board in the first instance and the board is supposed to do that in light of the presumption? Well, the board here did do that weighing. It specifically... It never referred to the presumption. It just simply said we're not buying those diagnoses rather than saying we assume that they do satisfy the DSM criteria. I think that goes to the issue that counsel raised in his opening remarks. The point here is that Cohen is really not applicable. This is a matter of weighing, competing, factual determination, which is something that Cohen, as it went on on page 140 of that decision, not just in that parenthetical that's part of the statement about the presumption, but the continuing paragraphs after that said, look, this is just about whether you can reject a diagnosis as not compliant with the DSM. No one here rejected the diagnoses. Cohen goes on to say, and I'm paraphrasing several paragraphs here, but of course VA can seek clarification and VA can engage in a weighing analysis between competing diagnoses. That's what Cohen says. I think it's fair to say that when the board is simply looking at weighing competing diagnoses, and that's clearly what's going on. It talks about how one diagnosis has greater probative weight than the other diagnosis. But it did talk about the fact that the treating physician diagnoses, the board said that they didn't feel that it satisfied the DSM criteria. And so how do you get over the presumption that you're supposed to assume it did? You can weigh it for other reasons and say that you think that the second view was more thoughtful, more developed, whatever, but that's not the same as saying they didn't satisfy the criteria when Cohen says we're supposed to presume that they did. The board did not throw out or reject the first diagnosis for not being in conformity with the DSM criteria. It specifically accepted that diagnosis and simply said that we find that the more recent diagnosis, which was supported by PTSD-specific testing, that had a thorough analysis, that explained the bases for its conclusion and went through all the DSM criteria, was more probative. So Cohen really doesn't come up there. One, because the board and the Veterans Court are not throwing out... You said that the board wasn't throwing out the psychiatrist thing on the basis that... The board clearly says that psychiatrist diagnosis was not supported by similar testing, i.e. DSM. And on that basis, it found that the PTSD-specific examination... I'm just getting back to the presiding judge's question to you about whether or not did the board ever give the Topeka psychiatrist diagnosis of PTSD any presumptive weight as having satisfied DSM. She asked you that question. And our answer is yes, it did. It did not reject it or throw it out. It rejected it. It threw out the Topeka psychiatrist diagnosis as not being supported by DSM testing. Well, what it said is it gave it less weight. I'm making a... I'm reading a sentence that says the VAMC psychiatrist, that's the Topeka doctor... Yes. ...is not supported by similar testing or explanation, and the similar testing and explanation refers back up above to the diagnosis that followed the DSM. That's right, Your Honor. So it did note the ways in which the former diagnosis had not gone through the DSM criteria, but it did not... it specifically did not say, we're not going to consider this or reject it entirely. What it ultimately did is engage in a classic, factual determination, as this court has recognized in several cases. Why should the Cohen presumption have any relevance in today's world, where the reason for its creation has disappeared? Why isn't it vestigial? We would agree, Your Honor, that it does not. Here, the Veterans Court itself, the CAVC... You didn't ask in your briefing for us to hold that the Cohen presumption simply has no play, that Mr. Carpenter is riding the wrong horse. Well, the CAVC did not reach that question. No one judge opinion is not going to overrule a precedential opinion by John Steinberg. Well, I would add, Your Honor, that I think the reason that it did not reach that question is because, again, this really isn't a Cohen issue. At the end of the day, because the VA... Say, for example, we decide it is a Cohen issue if Cohen is alive, because the board clearly didn't give any presumptive weight to the 2012 diagnosis in Topeka. Well, that's what the VA... the Veterans Court here addressed. It said, even if Cohen were alive... And it seems self-evident that it wouldn't be because the language that we're interpreting isn't in the statute. But the terms of Cohen, if you're going to play Cohen by the rules, Cohen requires the board to make the judgment that somebody, the RO, loused up and didn't do DSM. And then the board, and they're the ones, if anybody in the system are the fact boys or the fact people, it's the board. And so the board's the one that's supposed to kick it back down to the RO and say, whoopsie-doo, 2012 Topeka diagnosis, you didn't use DSM, right? And that didn't happen here. Well, that did happen here, and that's what... That happened because one judge at the CAVC said, I'm going to weigh the evidence and tell you what the real is. No, Your Honor. What happened here, and this is evident in the board's decision, but it's also evident in the 2015 diagnosis. This is 100% consistent with Cohen. Cohen specifically says that VA can seek clarification if there is some... if a clarification is necessary. That's clearly what was the case here When you look at the examiner's determination of pages 49 to 50 of the appendix, he talks about how the medical record up until that point was inconsistent. VA, at that point, consistent with Cohen, and this is what the Veterans Court said at page 3 of the appendix, sent the case back for further examination and clarification. They got that further examination and clarification, again, consistent with not just Cohen, but also what the regulations today require. You're past your time, but I just want to close the circle on this in terms of where I started. So your point is not that we don't have jurisdiction. Your point is that they didn't violate Cohen. Isn't it? I mean, you say, well, Cohen doesn't really apply here because they didn't really violate it, and therefore you don't have jurisdiction, but that's not really correct. We have jurisdiction over the legal question of whether Cohen was properly applied. And your argument is that it was. Well, certainly we would agree that to the extent Cohen is applicable, it was properly applied. That's our merits argument. But on the jurisdictional issue, the question that Mr. Dollison is raising here is still a factual question because he's, in effect, not saying that they applied Cohen incorrectly, but that at the end of the day, Cohen doesn't allow this or not Cohen doesn't allow, but under Cohen, there was an improper weighing of evidence. That's a factual question. Mr. Kerr is not challenging the weighing. Mr. Kerr is not. He's simply saying, cut me some slack. I was supposed to get a presumption that the Topeka doctor followed DSM in his diagnosis, and I didn't get that. That's what he says Cohen gives him. He can live with the down-the-road problem. He simply wants at the front door. I think I'm right. We'll hear from Mr. Kerr saying, give me what I get in putting something on the scale. I had something that was supposed to go on the scale, never went on the scale, as a presumptive DSM analysis. Okay, we need to move on. We'll give Mr. Carpenter three minutes instead of two. Dealing with the question of this court's jurisdiction, it is true that there was a total rating based upon unemployability assigned. But that total rating is not permanent, and that total rating may be taken away at any time, particularly if the veteran goes back to work. If the veteran is able to go back to work, then his rating will be based upon what the rating criteria is. Yeah, I don't think that causes you a problem. The question is whether or not there are additional factors in a PTSD analysis that might be looked at that weren't looked at in the MDD. And, Your Honor, I am more than happy to take a precedential decision from this court that adopts what the government just said on the record, that when they evaluate, they are evaluating for Mr. Dollison's symptoms for post-traumatic stress disorder. In the more than 30-plus years that I've been doing this work, that has never been the case. And that, in fact, what the VA does is to compete or to use non-service-connected conditions and those symptoms to detract from the rating because those are based upon a non-service-connected disability. Only if a condition is service-connected, not claimed as post-traumatic stress disorder, but actually service-connected for post-traumatic stress disorder, is the condition evaluated for rating purposes. Now, in terms of the notion of seeking clarification as referenced in the language in Cohen, as the government suggests, in fact what happened here, Your Honors, is that there are various references to depression as part of the symptomatology that Mr. Dollison experienced prior to his VA examination. Never in any medical record was a diagnosis made of major depressive disorder, which is a different psychiatric diagnosis under DSM than major depressive disorder. That was the first time that that diagnosis had been made and the first time that any doctor had said that Mr. Dollison's VA diagnoses from treating doctors did not meet the criteria under DSM. The criteria under DSM is the critical piece and the reason that Cohen has continuing viability because of the unique nature of post-traumatic stress disorder and its symptoms. Let me ask you one last question. So Cohen, you say that Cohen says you have to have this presumption. So is it your position that the presumption can't be overcome by evidence indicating that the original diagnoses were flawed? That is certainly my view, but I have to say to the Court in candor, there is no case law that addresses that. This is a judicially created presumption that doesn't deal with the rebuttal portion of the presumption. And obviously it would be of tremendous benefit to veterans to understand what they get for that presumption. Thank you very much, Your Honor. Thank you.